## Joseph Tremble v. Joseph Crowell et. al.

*Particular customs, when void.* A local custom which is opposed to the general policy of the state on the subject to which it refers, is not valid in law.

A custom that if fish caught within the state and sold in barrels to a dealer without express warranty, prove to be unsound, the seller shall refund the price, tends to defeat the purpose of the inspection laws of the state, and is therefore opposed to the general state policy on that subject, and can not be supported.

*Heard January 7th. Decided January 11th.*

Error to Bay Circuit.

This was an action of trespass on the case to recover damages for the sale of unsound fish. The declaration

contained a special count alleging a warranty of the fish. The common counts were also added.

Judgment was rendered for plaintiff.

The facts are stated in the opinion.

*A. Maxwell*, for plaintiff in error.

This was merely a sale of goods, in the ordinary course of business, without express warranty; and no warranty in such case is implied.

But the plaintiff below claimed that the contract in this case was governed by a settled usage, affecting the sale of fish in this market.

1. No custom can exist or prevail against the law of the land.

Proof of custom or usage, on the question of liability, cannot be received.—*Anthon, N. P. 76; 19 Ohio, 343; 2 Sum. 181; 2 Curtis, C. C. 142, 143 382; 2 Johns. 335; 5 Wallace, S. C. 679; Smith's Lead. Cases and Am. Notes, 68; 1 Caine's Reports, 43, 95; 1 Wash. C. C. 145; 2 Id. 7; 6 Porter, (Ala.) 123; 1 Chitty's Plead. 217; 3 Watts, 179; 10 Mass. 29; 7 Hill, 499; 25 Wend. 674; 16 N. Y. 395; 4 Seld. 194; 13 Pick. 181, 182; 4 Jones, N. C. Law, 332; 28 Ala. 704; 5 R. I. 230; 37 Miss. 202; 32 Vt. 616; 14 Gray, 210; 15 La. An. 436.*

When a contract is express, all usage is excluded.—*20 N. H. 150.*

The proposed usage *makes* the contract a contract of warranty, without any consideration to support it, or any agreement of the parties.

What difference is there in this case — if this usage prevails—between the effect of usage, and an agreement of warranty.—*5 Wallace, 580.*

Such an usage is unreasonable and void.

*Grier & McDonell*, for defendant in error.

1—The usage proved in this case was simply that if the fish sold proved to have been bad at the time of sale, the

vendor should repay the amount paid for such bad fish. Such a usage is reasonable. It is a mere matter of convenience. Instead of inspecting the fish at the time of sale, and discarding those that were unsound, the buyer takes a delivery of them and makes the inspection afterwards. *6 Hurls. & Norm. 278; Id. 617; 33 Vt. 92; 16 Id. 52; 17 Cal. 594; 9 Iowa, 428; 15 Md. 502; 31 Ala. 501; 32 Id. 617; 4 Hill, 104, 107; 2 Id. 354; 3 Conn. 9; 6 Id. 529; 14 Id. 363.*

A general, or special usage, affecting the peculiar locality, or trade, if proven, will be the law of the contract.—*40 Penn. 241; 25 Ill. 35; 2 Hilton (N. Y. C. P.) 472; 6 Common Bench (N. S.) 691; 8 Clarke (Iowa) 463; 5 Wis. 265; 6 Ohio (N. S.) 90; 25 Barb. 474.*

And a usage adding an implied warranty to a contract, which, by the common law, would not have the effect of a warranty, is reasonable and valid.—*20 N. H. 384; 11 Metc. 186; 4 Taunt. 487; 10 Mass. 203; 19 Mo. 157.*

Evidence of a usage affecting a contract in a matter, where the contract is silent, is admissible.—*19 Wend. 386.*

Evidence may be received that by custom or usage, the seller of chattels is answerable to the buyer, for any latent defects, though there be neither fraud nor warranty.—*3 Rawle, 101.*

2. The plaintiffs were entitled to recover, under the common money counts, any money which was due to them from the plaintiff by virtue of express or implied contract. The promise to make the plaintiff good for the unsound fish was more than a warranty. It amounted to an agreement to repay any money paid for the unsound fish. And the implied contract arising from the usage was, that "the vendor is liable to pay back to the purchaser the money paid for such unsound fish."

The contract was fully executed. The money was due. Under the common counts, upon an executed contract the plaintiff may recover on an express or implied agreement to pay money.—*1 Chitty's Pl. 340; 4 Kern. 597.*

TREMBLE v. CROWELL ET AL.

A general custom need not be pleaded.—*1 Chitty's Pl. 216; 1 Harring. 522.*

The parties in making the contract are supposed to refer to the usage, and it is part of the contract.—*Duer on Ins. 255, 282; 1 Greenlf. Ev. § 292.*

But even if it were a local usage, it need not be stated in the declaration. Being entitled to recover on the common money counts by virtue of the usage, we need not state the usage. It is part of the contract.

And a usage confined to a particular kind of trade, in the City of Boston, is styled a "general usage."—*11 Met. 186.*

But the usage involved in this case prevailed on the great lakes. The plaintiffs were residents of Ohio; the defendant a resident of Michigan. What usage could be more general?

The usage must be general in the whole city or place, or among all persons in the trade, and not the usage of a particular class only, or the course of practice in a particular office or bank, to whom or which the party is a stranger. And this seems to be the distinction between a general and particular usage.—*1 Greenlf. Ev. § 292 (n).*

3. But we contend that a usage of trade is not a custom in the sense that the term is used in the authorities when they state that a particular custom must be pleaded. "In its most extensive meaning this term includes custom, and prescription, though it differs from them; in a narrower sense it is applied to the habits, mode, and course of dealing which are observed in trade generally, or to some particular branches of trade. Usage of trade does not require to be immemorial to establish it; if it be known, certain, uniform, reasonable and not contrary to law, it is sufficient."—*2 Bouv. Dic. 615; 1 Black. Com. 77.*

4. The objection that the plaintiffs "could not recover on account of any express warranty, because no such warranty was set forth in the declaration," is entirely unfounded,

as the special count contained in the declaration does allege an express warranty.—2 Chit. Pl. 279, 283.

GRAVES J.

The defendants in error sued Tremble in the court below in assumpsit and sought to recover from him certain money which they alleged they had paid him for a quantity of fish he had sold to them, and which had proved to have been unsound and valueless. The declaration contained the common and money counts, and also a special count in which the defendants in error alleged in the usual manner that the plaintiff in error warranted the fish to be good, sound, and fit for market.

The plaintiffs below, after giving evidence to show that they were wholesale fish dealers at Toledo, in the State of Ohio, and purchased of the defendant, who was a fisherman at Bay City, and paid therefor, about $1.500 worth of fish, of which on their arrival at Toledo, some sixty - eight half barrels were found to be spoiled and valueless, offered evidence to prove that there was a settled uniform usage, that under a contract for the sale of fish for cash, and where there was no express warranty if the fish or any portion of them proved to be unsound, the vendor should be liable to pay back to the purchaser, the money paid for such unsound fish, and the evidence was admitted under objection.

Subsequently the Circuit Judge in submitting the case to the jury instructed them that if they should find such a settled uniform usage it was valid, and that by virtue thereof, the plaintiffs would be entitled to recover the money paid for the unsound fish, unless the parties made a contract excluding by its very terms the operation of such usage; and to this direction the defendant below excepted.

These objections present the main questions in the case.

It will be observed that the usage relied on, would, if established, place the dealers in fish in Bay City and

vicinity, in a position very different from that held by persons in the same business in other parts of the state; and would tacitly annex to all contracts there made for the sale of fish, unless expressly excluded by the contract itself, a stipulation, which would tend, inevitably, to supersede all official as well as private inspection; and would prescribe a specific redress in case of the sale of "tainted" or "damaged" fish, entirely different from that marked out by the statute.

Would such a usage be a reasonable one if conclusively proved?

It appears to me that it would not.

The legislature have thought proper to provide for a system of public inspection of various articles, and among them the article of fish; and have made numerous and precise regulations on the subject. — *1 Comp. L. p. 386 also, 392 to 394.*

They have provided for the election of inspectors; have required them to make inspection when desired so to do; have specified the manner in which it should be done; have provided that the fish inspected should be designated by the inspector as number "one," or "two," according to quality, and have required the inspectors to report annually to the Secretary of State the quantity, quality, and kinds inspected during the year.

They have also provided that, if any person shall sell, within the state, or export, or cause to be exported therefrom, any tainted or otherwise damaged fish, unless with the intent that the same shall be used for some other purpose than as food, he shall forfeit $10 for every one hundred pounds of such fish; and that upon the trial the burden of proof shall be upon the vendor to show for what purpose such fish were sold or exported.

By another section they have declared that it shall not be obligatory upon any one to have fish inspected; but that all contracts for the sale of fish shall be deemed made with

reference to those provisions of the statute regulating the quality, quantity and other descriptions, unless the parties otherwise expressly agree.— *Comp. L.* § *1236.*

Although the statute is not imperative on the subject of inspection, the penal provision against the sale of "tainted" or damaged fish is so; and the whole act is plainly express-ive of a legislative purpose to provide the system of regu-lations for the trade, which the legislature deemed the best. Whether the usage in question would directly and necessar-ily conflict with any of these statutory regulations need not be determined, since in my opinion the usage can not be sustained if found to be inconsistent with the policy or spirit of the statute.

It appears to me to be a part of the policy of the law in question to encourage the practice of official inspection and discourage a contrary course; to regulate the traffic in fish in the manner most likely to insure fairness between dealers, and maintain everywhere the reputation of a most important branch of the commerce of the state.

As the supposed usage assumes that the article is pur-chased without the safeguard of inspection, and that the buyer will be saved from loss on a purchase of uninspected fish by the right given him by the usage to recover of the vendor the price actually paid; the effect of the usage must be to cause dealers to dispense with inspection, and pave the way for those consequences which the law was designed to avert; and, at the same time, to defeat the desirable objects which the legislature intended to promote.

Without attempting to contrast the usage with specific provisions, I think there can be no doubt but that it would introduce a practice altogether at variance with the spirit and plain policy of the inspection laws; and that if it were accepted as binding, it would go far to render those laws nugatory, and to supercede inspection altogether by respon-sible public officers.

Entertaining this opinion, I think that the usage in question was and is invalid, and that it could furnish no basis for a recovery in this case.

This conclusion, if correct, makes it unnecessary to consider the other questions in the case.

I think the judgment of the court below, should be reversed, with costs.

The other Justices concurred.